[Crim. No. 4963.   In Bank.   May 20, 1949.]

In re FRANK PEDRINI, on Habeas Corpus.

Albert L. Wagner, under appointment by the Supreme Court, for Petitioner.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHAUER, J.—Petitioner, an inmate of Folsom State Prison, is confined under sentences upon conviction of four crimes. One of these sentences is for life imprisonment; three are indeterminate sentences with no maximum specified by

statute. By this application for habeas corpus petitioner questions the validity and effect of certain orders of the trial court purporting to determine whether the sentences, as severally related to each other, are to run concurrently or consecutively. It is petitioner's principal contention that a sentence of imprisonment for life cannot run consecutively to indeterminate sentences or sentences for years because the lesser sentences merge in the life sentence.[1] For the reasons hereinafter stated, we have concluded that this contention is without merit.

In 1928, petitioner was convicted of robbery of the second degree and sentenced to state prison for the term prescribed by law. In 1935, he was released on parole. During the same year he was charged with and pleaded guilty to murder, robbery and burglary. The trial court determined that each of these three offenses was of the first degree. On December 28, 1935, the court rendered its judgments in the three cases; it fixed the punishment on the murder count at life imprisonment and ordered that the sentence on the murder count "run consecutively with[2] the sentences for robbery and burglary," that the sentence on the robbery count "run consecutively with[2] the sentences for murder and burglary" and that the sentence on the burglary count "run consecutively with[2] the sentences for murder and robbery." On January 13, 1936, the trial court made the following order *in each of the three 1935 cases*: "It being brought to the attention of the court that at the time of the pronouncing of judgment in this action on the 28th day of December, 1935, there was a prior existing sentence and judgment against said defendant of which the Court had no knowledge . . . and the Court, at the time judgment was pronounced herein on the 28th day of December, 1935, did not determine, as is required by Section 669 of the Penal Code[3] . . . the manner in which judgment herein should

[1] As is hereinafter explained, this is now the statutory rule (Pen. Code, § 669) but at the time the orders as to petitioner's sentences were made no statute expressly provided whether a life sentence could or could not be made consecutive to other, lesser sentences of imprisonment.

[2] This use of the preposition "with," instead of the preposition "to," although unusual, apparently is intended to mean "in relation to."

[3] The applicable portion of section 669 then provided, "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently or whether the imprisonment to which he is or has been sentenced upon the second or other subsequent conviction shall commence at the termi-

run in relation to the prior existing judgment . . . IT IS HEREBY ORDERED . . . that the sentence imposed . . . in this action . . . shall commence to run from the date of the expiration of the former existing sentence."

It is impossible that each of the three 1935 sentences should run "consecutively with" (i.e., in relation to) the other two, as directed by the December 28, 1935, judgments, and that at the same time each of the 1935 sentences should "commence to run from the date of the expiration" of the 1928 sentence, as directed by the orders of January 13, 1936. If *each* of such sentences is to "commence to run" on the same date then those sentences must run concurrently. Therefore, it must be determined whether the January 13, 1936, orders, insofar as they necessarily purport to provide, in effect, that the 1935 sentences run concurrently with each other, actually supersede those portions of the 1935 judgments which provide that those three sentences shall run consecutively *in relation to each other*, or whether they affect the sentences of 1935 *only in their relation to the unexpired 1928 sentence*.

In *People* v. *McAllister* (1940), 15 Cal.2d 519 [102 P.2d 1072], the court reviewed earlier California cases which considered the question whether a trial court could modify its previously pronounced sentence and concluded (p. 526 of 15 Cal.2d), "we think the following rule has been established: If the sentence has been entered in the minutes of the court, or if the defendant has begun serving said sentence or has been restrained by the sentence imposed, then the court is without jurisdiction to vacate, add to, or in any manner modify the sentence originally pronounced. On the other hand, if the sentence pronounced has not been entered by the clerk in his minutes, and no legal restraint has been imposed upon the defendant by reason of said sentence, then it is proper for the court to change the sentence originally

---

nation of the first term of imprisonment to which he has been sentenced, or at the termination of the second or subsequent term of imprisonment to which he has been sentenced, as the case may be. In the event that the court at the time of pronouncing the second or other judgment . . . had no knowledge of a prior existing judgment . . ., then, upon such prior judgment . . . being brought to the attention of the court at any time prior to the expiration of sixty days from and after the actual commencement of imprisonment upon the second or other subsequent judgment, the court shall determine how the term of imprisonment upon said second or other subsequent judgment shall run with reference to the prior incompleted term or terms of imprisonment." (Stats. 1935, p. 1670.)

pronounced." To this rule there are two statutory exceptions which permit the trial court in certain circumstances and within specified time limitations to modify provisions of its judgments which affect the length of time of imprisonment: (1) "[I]n exceptional cases, at any time not later than 60 days after the actual commencement of imprisonment, the court may, in its discretion, provide that the defendant is not an habitual criminal" (Pen Code, § 644); and (2) (as appears from footnote 3, above, quoting the statute as it read in 1936 on the date of the subject orders) "In the event that the court at the time of pronouncing the second or other judgment . . . had no knowledge of a prior existing judgment . . . then, upon such prior judgment . . . being brought to the attention of the court at any time prior to the expiration of sixty days from and after the actual commencement of imprisonment upon the said second or other subsequent judgment, the court shall determine how the term of imprisonment upon said second or other subsequent judgment shall run *with reference to the prior incompleted term . . .*" (Pen. Code, § 669). (Italics added.) It will be noted that the last quoted statute does not purport to authorize the court to amend its "second or other subsequent" judgments *inter sese*, and as the first noted exception obviously does not apply to petitioner, it appears that the purported amendments to the 1935 judgments, as affecting their relationship to each other, lack express statutory authority. Attempts to modify judgments except as authorized by the above quoted statutes have generally not been permitted. Thus, it has been held that the trial court, after expiration of the 60-day period provided in section 644, cannot modify its judgment by determining that defendant is or is not an habitual criminal (*People* v. *Jones* (1936), 6 Cal.2d 554, 555 [59 P.2d 89]; *In re Fontino* (1933), 135 Cal.App. 466, 468 [27 P.2d 413]; *In re Schenk* (1943), 61 Cal.App.2d 168, 174 [142 P.2d 343]; *People* v. *Avelino* (1947), 81 Cal.App.2d 934, 935 [185 P.2d 361]); nor can the trial court, after expiration of the 60-day period specified in section 669, make an order prescribing how its sentence should run with reference to a previously existing sentence (*In re Radovich* (1943), 61 Cal.App.2d 177, 180 [142 P.2d 325]); nor can the trial court, after commencement of defendant's imprisonment, modify or add an order as to whether more than one sentence imposed by it on the same occasion shall be served consecutively or concurrently (*Albori* v. *Sykes* (1937), 18 Cal.App.2d 619, 621 [65 P.2d

84]*)*. This petitioner, at the time (January 13, 1936) the trial court ordered that each of the three 1935 sentences should begin to run at the expiration of the 1928 sentence, was under restraint because of the 1935 sentences. Therefore, under the rule of the McAllister case, *supra* (p. 526 of 15 Cal. 2d), and lacking statutory authority, the trial court had no power to modify the manner in which the 1935 sentences had been ordered to run in relation to one another.

As among themselves, the order in which the three 1935 sentences run cannot be said to be prescribed by the directions in each of the 1935 judgments that each 1935 sentence run ''consecutively with'' the other two 1935 sentences. However, the failure of the trial court to specify the *order* in which the sentences run does not, in the circumstances, make it impossible to carry out the apparent intent and direction that the sentences shall run consecutively in relation to each other. The following language in *United States* v. *Daugherty* (1926), 269 U.S. 360, 363 [46 S.Ct. 156, 70 L.Ed. 309], is applicable: ''Sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them. The elimination of every possible doubt cannot be demanded. Tested by this standard, the judgment[s] here [were] sufficient to impose . . . three . . . terms, . . . to be served consecutively, and to follow each other in the same sequence as the [order in which the judgments were entered].'' (See, also, *Rice* v. *United States* (1925), 7 F.2d 319, 321; *Gillenwaters* v. *Biddle* (1927), 18 F.2d 206, 207; *Collins* v. *United States* (1927), 20 F.2d 574, 577; *Boyd* v. *Archer* (1930), 42 F.2d 43, 44; *Subas* v. *Hudspeth* (1941), 122 F.2d 85, 87; *People* v. *Forbes* (1863), 22 Cal. 135, 138; *Ex parte Kirby* (1888), 76 Cal. 514, 520 [18 P. 655]; *People* v. *McCracken* (1945), 68 Cal.App.2d 574, 576 [157 P.2d 21].)

According to the 1935 judgments and the operative portion of the orders of January 13, 1936, therefore, petitioner's sentences run as follows: The 1928 sentence for robbery of the second degree, followed by the 1935 sentence for murder of the first degree, followed by the 1935 sentence for robbery of the first degree, followed by the 1935 sentence for burglary of the first degree.[4] The punishments for these offenses were, at

---

[4]It may be noted that all the sentences imposed upon petitioner are regarded as comprising a single, continuous term of confinement for the purposes, among others, of allowing and forfeiting good-time credits. (*In re Cowen* (1946), 27 Cal.2d 637, 644 [166 P.2d 279].) This fact does not affect the determination of any question here presented.

the respective times of their commission, and now are, as follows: Robbery of the second degree is punishable by an indeterminate sentence, regarded for some purposes as a life sentence until the Adult Authority fixes the term. (*In re Quinn* (1945), 25 Cal.2d 799, 800 [154 P.2d 875]; Pen. Code, § 213, par. 2.) Murder of the first degree is punishable by death or ''confinement in the state prison for life'' (Pen. Code, § 190) and on the life term the prisoner is subject to parole after serving seven calendar years (Pen. Code, § 3046 [Stats. 1941, ch. 106, § 15]). Robbery of the first degree and burglary of the first degree are punishable by indeterminate sentences, regarded for some purposes as life sentences until and unless the Adult Authority has fixed the term at a period of years. (*In re Quinn* (1945), *supra*; Pen. Code, § 213, par. 1; Pen. Code, § 461, par. 1.) Petitioner's principal contention is, as stated above, that the life sentence cannot run consecutively to the indeterminate sentence for second degree robbery (which was fixed by the Adult Authority at 10 years), nor can the 1935 indeterminate sentences run consecutively to the life sentence, because all lesser sentences merge in the life sentence.

In 1935 and 1936, when the questioned orders were made, no statute prohibited the court from making them. In 1941, section 669 of the Penal Code (quoted *supra*, footnote 3, as it read in 1935 and 1936) was amended (Stats. 1941, ch. 742, § 1) to add the proviso that ''if the punishment for any of said crimes is expressly prescribed to be life imprisonment, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term.'' (The section was again amended in 1943 [Stats. 1943, ch. 219, § 1] in respects not here material.) No part of the Penal Code ''is retroactive, unless expressly so declared'' (Pen. Code, § 3), and there is no declaration that the 1941 amendment of section 669 was intended to be retroactive. Therefore such amendment, providing for merger of lesser terms in a term expressly prescribed to be life imprisonment, does not apply retrospectively to the orders that the sentences of petitioner are consecutive. (See *People* v. *Ferlin* (1928), 203 Cal. 587, 602-603 [265 P. 230]; *In re Fisher* (1934), 1 Cal.App.2d 449 [36 P.2d 841]; *People* v. *Cowen* (1937), 20 Cal.App.2d 674, 675, 677 [67 P.2d 737].)

In determining whether, in the absence of a controlling

statute, a life sentence can run consecutively to lesser sentences, the following matters are pertinent:

It is settled that a trial court can order that a subsequently pronounced sentence of imprisonment shall run consecutively to an indeterminate sentence with no maximum prescribed by statute. (*In re Quinn* (1945), *supra*, 25 Cal.2d 799, 804; *People* v. *Hayes* (1935), 9 Cal.App.2d 157, 160 [49 P.2d 288]; *People* v. *Glab* (1936), 15 Cal.App.2d 120, 125 [59 P.2d 195]; *People* v. *Cowen* (1937), *supra*, 20 Cal. App.2d 674, 676.) The practical considerations supporting the view that such sentences can be consecutive, as expressed by Judge Fricke in the Hayes case and approved by this court in the Quinn case, are as follows (p. 160 of 9 Cal.App.2d; p. 805 of 25 Cal.2d): "[E]ven where a defendant is already under a life sentence or even a sentence of death, this does not afford him immunity from prosecution and conviction of other offenses; nor does it preclude the court from passing judgment and sentence upon a subsequent conviction. The fact that a prisoner who serves a life term and, while serving such, dies in prison cannot serve other sentences imposed for other offenses and running consecutively does not prevent, as a matter of law, the imposing of such consecutive sentences even though, as stated in *In re Woofter*, 134 Cal.App. 580, 583 [25 P.2d 859], the additional penalty cannot be imposed, i. e., actually inflicted, upon such life termer. It might also be mentioned that even where a prisoner is serving a life sentence this does not of necessity mean that he will remain in prison until he dies. Parole, commutation or pardon may release him from prison long before his term of life ends.".

The practical considerations expressed in *People* v. *Hayes*, *supra*, impel to the conclusion that, in the absence of a statute to the contrary, a sentence which in a technical sense is expressly for life—but which does not necessarily mean actual imprisonment for life—can run consecutively to lesser sentences. We recognize that in *People* v. *McNabb* (1935), 3 Cal.2d 441, 457 [45 P.2d 334], and in *People* v. *Jones* (1936), *supra*, 6 Cal.2d 554, 557, are statements to the effect that a "life sentence" cannot be made consecutive to other sentences "because a prisoner cannot in fact serve a term longer than his natural life." These statements— whether they be regarded as referring to life sentences *with*, or to life sentences *without*, possibility of parole—were unnecessary to the decision of those cases and are, therefore, not controlling here. The effect of the view so suggested in

the McNabb and Jones cases, which view petitioner urges us to declare as law of the state, retroactively applicable to his sentences, would be (and the effect of section 669 since its 1941 amendment is) that once a defendant is sentenced to life imprisonment he is immune from punishment for a further crime unless that crime is one for which sentence of death is imposed. To illustrate: A defendant sentenced to life imprisonment for murder of the first degree and paroled after the expiration of seven years may commit as many robberies, burglaries, and rapes as he has opportunity to commit; his parole, granted by the Adult Authority as an act of grace, can be revoked by that agency, but nothing can be done by the courts by way of punishing him for his depredations committed while he was on parole because sentences therefor merge in the previous life sentence. Such a result, in our opinion, should be permitted to occur only where the law as enacted is so clear and specific in its terms as to admit of no other interpretation. We find nothing in the 1941 amendment which requires us to give it retroactive application to the end urged by petitioner.

For the reasons above stated the writ is discharged and petitioner is remanded to custody.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment discharging the writ and remanding the prisoner to custody .

I feel, however, that the 1941 amendment to section 669 of the Penal Code, which provides that ''if the punishment for any of said crimes is expressly prescribed to be life imprisonment, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term,'' is not only wise, but is a provision containing good, common sense, and that said section should be interpreted as having this meaning even before the 1941 amendment.

Even the most hardened criminal has but one life. As this court said in *People* v. *McNabb*, 3 Cal.2d 441 [45 P.2d 334] : ''The lawmakers had no thought of attempting to impose additional time to the longest possible span of time or supplementing the infinite with the finite. The whole is greater than any of its parts. The proposition contended for reduces itself

to an absurdity. The lawmakers had no thought of a life sentence when the section was adopted. It was dealing with consecutive terms of imprisonment for a term of years." (*People* v. *Jones*, 6 Cal.2d 554 [59 P.2d 89]).

The argument set forth in the majority opinion by way of illustration as to the possible effect of the amendment is not well put—it defeats its proponents. To say that one sentenced to a life term and who is later paroled may commit as many crimes as he chooses with impunity so far as the law is concerned is absurd. A parolee may still be under the supervision of the proper authorities and may be considered as still serving his sentence and yet be free of the bars and walls behind which he was confined. If he does not lead the life of a useful, law-abiding citizen while on parole, but breaks other laws, and commits other crimes, and is convicted of them, his parole is revoked and he is once again imprisoned. (Pen. Code, §§ 3040 to 3065 incl.) A prisoner serving a life sentence is not entitled to credits for good behavior, so his imprisonment cannot be shortened in that way. A life sentence means just that unless the prisoner is released through parole, commutation or pardon. In this connection it must be noted that the prisoner is not entitled to parole, commutation or pardon as a matter of *right*. All three are matters of "grace" and are discretionary. The governor of this state *may* pardon a prisoner or commute his sentence to a lesser one, and the Adult Authority *may* grant him a parole. Both the governor and the Adult Authority represent the People of this state, and it must be assumed that as representatives of the People, the duty of protecting the public will be discharged. A prisoner whose record shows that he was convicted of other crimes while "out on parole" would, most probably, be considered an unlikely subject for either parole, commutation, or pardon.

It appears to me quite unreasonable to say that the courts can do "nothing by way of punishing" a parolee for depredations he had committed while at large. If such a prisoner is convicted of the lesser crimes, and his parole is revoked, and he is once again remanded to prison to serve his life term out, it would seem that he is sufficiently punished, and that adding a term of years to extend beyond his death is a sentence which the courts of this state, while they may impose it, have no jurisdiction to enforce. The law should not countenance such a useless procedure.